# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**EDWARD SIMMONS (#103371)**                                    **CIVIL ACTION**

**VERSUS**

**JAMES LeBLANC, SECRETARY, ET AL.**                    **NO. 12-0636-SDD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 31, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

EDWARD SIMMONS (#103371)                                    CIVIL ACTION

VERSUS

JAMES LeBLANC, SECRETARY, ET AL.                    NO. 12-0636-SDD-RLB

<u>**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

This matter comes before the Court on the parties' cross-motions for summary judgment (Rec. Docs. 45, 96 and 116).[1]

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Secretary James LeBlanc, Warden Burl Cain, Legal Programs Director Trish Foster, Ass't Warden Carl (Tim) Delaney, Major Daniel Davis, Capt. John Wells, III, Sgt. Katherine Franklin, Sgt. Nakisha Rogers, Sgt. Tawanda Russ, Sgt. Lonnien Simmons, Sgt. Adriane Porter, Sgt. Latoya Dennis and Sgt. Michael Swift, complaining that his constitutional rights have been violated by the failure of prison officials to ensure that he receives prescribed medications, by retaliation in response to his filing of administrative grievances, and by a failure to protect him from harm at the hands of a co-inmate on March 26, 2012.[2]

---

1. In the instant motion, the defendants have provided the correct names of certain defendants whose names were mis-spelled or incomplete in the original Complaint. In addition, by Amendment to the original Complaint, the plaintiff has provided the correct names of certain additional defendants. The Court will consider the Complaint to be amended to reflect the correct names of the defendants as stated.

2. Attempts by the United States Marshal's Office to serve defendants Nakisha Rogers and Adriane Porter have proven unsuccessful because the Louisiana Department of Public Safety and Corrections has refused to accept service on behalf of this defendant, specifically because they are no longer employed by the Department and because they no longer reside at the last known addresses provided by the Department under seal. *See* Rec. Docs. 100 and 136. Pursuant

The plaintiff moves for summary judgment, relying upon the pleadings, excerpts from his administrative remedy proceedings ("ARPs") dating back to 2002, his own sworn statement and the sworn statements of several co-inmates.

The defendants move for summary judgment, relying upon the pleadings, a Statement of Undisputed Facts, copies of excerpts from the plaintiff's medical records, a copy of the Camp C Daily Post Roster for the date March 18, 2012, ARP Statements dated March 18 and July 12, 2012, prepared by Capt. John Wells, a Memorandum to the LSP Disciplinary Board dated April 1, 2012, prepared by Major Daniel Davis, a Disciplinary Report dated March 26, 2012, prepared by Lt. James Savoy (charging the plaintiff with Contraband, Aggravated Disobedience and Aggravated Fighting), an Unusual Occurrence Report dated March 26, 2012, prepared by Lt. James Savoy, excerpts from the LSP Camp C Tiger logbook for the dates March 18-19 and 26-27, 2012, copies of the Enemy Lists of the plaintiff and co-inmate George Lee, copies of correspondence dated February 6 and March 6, 2012, reflecting that Tawanda Russ was on Family and Medical Leave from LSP between January 23 and March 19, 2012, and the affidavits of Lt. James Savoy and defendants Carl (Tim) Delaney, Tawanda Russ, Michael Swift, John Wells, Daniel Davis, Trish Foster, Latoya Williams, and Katherine Franklin.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify

---

to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff to serve a defendant within 120 days of commencement of an action is cause for dismissal of that defendant from the proceedings. It is appropriate, therefore, that the plaintiff's claims asserted against defendants Nakisha Rogers and Adriane Porter be dismissed, without prejudice.

those portions of the pleadings, depositions, answers to interrogatories and admissions on file,
together with affidavits, if any, that show that there is no such genuine issue of material fact.
*Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  If the moving party carries its burden of proof
under Rule 56, the opposing party must direct the Court's attention to specific evidence in the
record which demonstrates that the non-moving party can satisfy a reasonable jury that it is
entitled to a verdict in its favor.  *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248.  This
burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and
unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  *Little v.
Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, Rule 56 mandates that summary
judgment be entered against a party who fails to make a showing sufficient to establish the
existence of an element essential to that party's case and on which that party will bear the burden
of proof at trial.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  Summary judgment is
appropriate in any case where the evidence is so weak or tenuous on essential facts that the
evidence could not support a judgment in favor of the non-moving party.  *Little v. Liquid Air
Corp.*, *supra*, 37 F.3d at 1075.  In resolving a motion for summary judgment, the Court must
review the facts and inferences in the light most favorable to the non-moving party, and the
Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual
disputes.  *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

   In his Complaint, the plaintiff alleges that on an unspecified date, defendant Warden Cain
modified the pill-call procedures at LSP which previously had called for LSP *medical* officers to
deliver prescribed medications to inmates in segregated confinement and also had allowed
inmates to sign for receipt of their medications.  Now, however, allegedly due to staff shortages,
medications are delivered to the tiers by poorly trained and poorly supervised LSP security
officers and are then distributed to the inmates by poorly trained and poorly supervised tier

security officers.  In addition, inmates are no longer allowed to sign for receipt of their

prescribed medications and, instead, the dispensing security officers initial the respective

inmates' Medication Administration Reports ("MARs") to signify the inmates' receipt of their

medications on particular dates.  According to the plaintiff, however, this procedure has allowed

security officers assigned to deliver medications to his Camp C tier, specifically defendants

Tawanda Russ and Latoya Dennis, to routinely mishandle or neglect to re-order inmates'

medications.  According to the plaintiff, these officers and the tier security officers who dispense

the medications on the tier, have improperly distributed the wrong medication to inmates, have

misappropriated medications for their own use or for re-sale, have denied medications to inmates

as a form of punishment, and have falsified inmates' medical records to reflect receipt of

medications which have not been delivered.  The plaintiff asserts that, as a result, he and other

inmates have been deprived of medications on multiple occasions, "sometimes as long as a week

at a time" according to the Complaint, and this has resulted in inmates, including the plaintiff,

being rushed to the infirmary on unspecified occasions "to be given [their] medication."

In addition to the foregoing, the plaintiff asserts that he submitted an administrative

grievance to prison officials complaining of the foregoing problems, which grievance was

assigned the ARP No. LSP-2012-0530.  The plaintiff further asserts that he thereafter refused

requests by prison officials to voluntarily withdraw the referenced grievance and instead

submitted "supplements" to that ARP.  As a result, he allegedly became the subject of retaliatory

harassment by prison security officers.  Specifically, on February 25 and 26, 2012, after the

plaintiff allegedly submitted "supplements" to the initial grievance, complaining therein of

harassment in response to his refusals to withdraw the grievance, defendant Michael Swift began

harassing the plaintiff by refusing the plaintiff his medication, by conducting an abusive

shakedown search of the plaintiff's cell, and by informing other inmates on the tier that the

plaintiff was acting as a "snitch" or informant by complaining to supervisors about the non-delivery of medications by security officers.  On March 16, 2012, the plaintiff allegedly had an opportunity to speak with defendant Tim Delaney, and defendant Delaney allegedly admitted to the plaintiff that numerous complaints had been received from Camp C inmates about the mishandling of medications.  According to the plaintiff, however, no further action was taken to address his complaints.  Finally, the plaintiff asserts that on March 18, 2012, he filed a purported "emergency" grievance, complaining that he had been approached by defendants John Wells and Lonnie Simmons and had been verbally threatened by these defendants with unspecified retaliation if he continued to pursue his original grievance regarding the delivery of medications at LSP.  Specifically, these defendants allegedly told the plaintiff that if he did not terminate the referenced grievance, he could "no longer live in Camp C," and that if he "knew what was good for [him], [he'd] better been done check out of Tiger Unit by the time thay [sic] came back to work."  Complaint, Rec. Doc. 1, at p. 7.

Finally, on the morning of March 26, 2012, as the plaintiff and other inmates were being let out of their cells to report to work, the plaintiff was brutally attacked without prior notice by co-inmate George Lee, who was wielding an "icepick type weapon" and with whom the plaintiff had never before had any problem.  The plaintiff asserts, however, that in the days preceding the attack, the co-inmate had developed a "dislike" for the plaintiff because the plaintiff was filing complaints against officers Simmons and Swift for harassment and for refusing to give the plaintiff his medications.  According to the plaintiff, co-inmate Lee did not want these complaints to be made because co-inmate Lee was the direct beneficiary of alleged wrongdoing by these officers and routinely received items from defendants Simmons and Swift, including medications which were intended for other inmates on the tier.  Further, co-inmate Lee was aware that the plaintiff's complaints would potentially result both in his no longer receiving

other inmates' medication and in the transfer of defendants Simmons and Swift from the tier. The plaintiff further specifically asserts that, "a few days prior to the assault, Sergeant Swift had told inmate George Lee and other inmates that [the plaintiff] had 'snitch' on him."  In addition, the plaintiff asserts that he observed defendant Swift give co-inmate Lee "some stuff" and the plaintiff infers from this that co-inmate Lee was "'pay[ed]' by Sergeant Swift to resolve their problem."  Complaint, Rec. Doc. 1 at p. 9.

   In addition to the foregoing, the plaintiff alleges that, after commencement of the referenced attack, defendant Katherine Franklin, the security officer assigned to the tier on that date, initially delayed in calling for assistance to stop the fight.  The plaintiff also complains that he was thereafter charged with violating prison rules relative to contraband, aggravated disobedience and aggravated fighting.  He complains that there was no justification for these charges inasmuch as the offending co-inmate was the one who instituted the attack, possessed the weapon utilized in the attack, and suffered no injuries during the attack.  Notwithstanding, defendant Daniel Davis thereafter prepared a falsified investigative report which was utilized to find the plaintiff guilty in connection with the referenced charges, resulting in the plaintiff being sentenced to punitive segregated confinement at Camp J at LSP.  The plaintiff asserts that this was a further act of retaliation against him in response to his complaints regarding the delivery of medications at the prison.

   In response to the plaintiff's allegations, the defendants first contend that the plaintiff has failed to state a cause of action for monetary damages against the defendants in their official capacities.  In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks the recovery of monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71

(1989).  In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.  *Id.* at 25. Accordingly, the plaintiff's claims asserted against the defendants in their official capacities for monetary damages are subject to dismissal.  In contrast, the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable because a claim against a state official in an individual capacity, seeking to impose liability for actions taken under color of state law, is not treated as a suit against the state.  *Id.* at 29.[3]

Turning to a consideration of the plaintiff's claims asserted against the defendants in their individual capacities, the defendants next assert that they are entitled to qualified immunity in connection with the plaintiff's claims.  Specifically, the defendants assert that the plaintiff will be unable to establish that the defendants participated in any violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.  *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012).  As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights.  *Id.* at 201.

---

3.  In addition to the foregoing, the plaintiff also prays for declaratory and injunctive relief.  Whereas the defendants are correct that the recovery of monetary damages from the defendants in their official capacities is precluded by Eleventh Amendment sovereign immunity, *see Hafer Hafer v. Melo*, *supra*, a claim for prospective relief asserted in federal court against a defendant acting in an official capacity is not prohibited under the Eleventh Amendment because such a suit is not treated as an action against the state.  *Will v. Michigan Department of State Police, supra*.  *See also* 15 *Am.Jur.2d Civil Rights* § 101.

Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[4]

Undertaking the qualified immunity analysis and evaluating the evidence presented by the parties, the Court concludes that the plaintiff's Motion for Summary Judgment should be denied, that the Motion for Summary Judgment of defendant Lonnie Simmons should be granted, and that the Motion for Summary Judgment of the remaining defendants should be granted in part, dismissing all of the plaintiff's claims asserted against the remaining defendants except the plaintiff's claim asserted against defendant Michael Swift in the defendant's individual capacity, of retaliation and deliberate indifference arising from the fight which occurred on March 26, 2012. Specifically, the Court finds that, with the exception of this single defendant and claim, the plaintiff's allegations and evidentiary showing are not sufficient to

---

4. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

create a genuine issue of material fact relative to the defendants' entitlement to qualified immunity.

Initially, the Court finds that the plaintiff has failed to adequately establish the viability of a claim of episodic deliberate indifference relative to his serious medical needs.  In this regard, in order for an inmate-plaintiff to prevail on a claim that his constitutional rights have been violated by the provision of improper or inadequate medical care, he must allege and show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985).  Whether the plaintiff has received the treatment or accommodation which he believes he should have is not the issue.  *Estelle v. Gamble, supra*.  Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action.  *Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991); *Johnson v. Treen, supra*.  Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment.  *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994).  As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  The deliberate indifference standard sets a very high bar: the plaintiff must establish that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra*.  Further, a mere delay in treatment does not constitute an Eighth Amendment violation without both deliberate indifference and a resulting substantial harm.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Applying the foregoing standard, the Court finds that the plaintiff has failed to present evidence sufficient to establish that any specific defendant has been deliberately indifferent to his serious medical needs.  Although he asserts generally that the pill-call officers who deliver medications to his housing unit and the security officers who thereafter dispense these medications to inmates on the tier have generally mishandled medications, misappropriated medications, dispensed medications to the wrong inmates, withheld medications as punishment, and falsified medication records, he does not identify any specific medications that he has not received, the dates of such non-receipt, the officer or officers responsible for any specific failures, any specific resulting harm or aggravation of his medical condition caused by the alleged failure, or any dates upon which he was allegedly rushed to the infirmary to receive medications.[5]  The most that he alleges is that he has occasionally been "rushed" to the infirmary, but he does not identify any specific dates that this has occurred or the persons responsible for the deprivation.  In this regard, in order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).  Any allegation that the individual defendants are responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under §

---

5.  Although the plaintiff complains of events dating back to 2002, it appears that many of these claims would be barred by the applicable statute of limitations.  For claims brought pursuant to 42 U.S.C. § 1983, federal courts borrow the forum state's personal injury limitation period.  *See Harris v. Hegmann*, 198 F.3d 153, 156-57 (5th Cir. 1999).  In Louisiana, that period is one year, taking into account the pendency of administrative remedy proceedings which toll the running of the limitations period while such claims are pending.  *See id.* at 158; La. Civ. Code art. 3492.

1983.  *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").   The plaintiff appears to concede this point because he states, in his Motion for Summary Judgment, that his complaint is "'not' that he is receiving inadequate medical care in general sense" but rather, that there are systemic deficiencies in the medication-delivery procedures employed at LSP.  *See* Rec. Doc. 45 at p. 3.  Accordingly, the Court finds that the plaintiff's claims relative to alleged episodic acts of deliberate medical indifference by individual named defendants should be dismissed.[6]

Turning to the plaintiff's allegations which assert that there is a wide-spread policy or practice at LSP which has resulted in systemic deficiencies in the medication-delivery system at the prison, he asserts in this regard that defendant Cain has improperly allowed poorly trained and poorly supervised security officers to be responsible for delivering and dispensing medications to inmates on the cell tiers and that this has resulted in lapses in the delivery and re-ordering of medication and has placed inmates at serious potential risk of substantial harm.  The plaintiff asserts that medically trained personnel should instead be responsible for dispensing medications to inmates and that inmates should be allowed to sign or initial their own records instead of initials being provided by the dispensing security officers.

Upon evaluation of the plaintiff's allegations and evidentiary submissions, the Court finds  that the plaintiff's showing is not sufficient to reflect the sort of systemic deficiencies

---

6.  Although the plaintiff appears to complain that other inmates confined at LSP have suffered from the alleged deficiencies in the medication-delivery procedures employed at the prison, the law is clear that a pro se litigant has no standing to assert the civil rights of third parties injured by the defendants' alleged unlawful conduct.  *Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986).  Accordingly, the plaintiff's allegations relative to harm allegedly suffered by other inmates should be disregarded.

which the courts have found to warrant relief in other cases.  As previously noted, he has

provided no proof of any specific dates upon which he has been deprived of medication or of any

specific harm or injury that he has suffered as a result of the alleged deficiencies.  In contrast, the

evidence adduced by the defendants reflects that, by regulation, certified pharmacists are

employed at LSP to fill prescriptions written by the physicians who treat inmates confined at the

prison.  Security officers who have undergone training in the delivery and dispensation of

medication are then tasked with delivering the medications in locked boxes to the tiers where the

inmates are housed.   The medications are then dispensed to the individual inmates by security

officers assigned to the specific tiers, who have also undergone training, and the pertinent prison

regulation provides that the dispensing officers are directed to affix their initials to the respective

inmates' Medication Administration Reports, signifying the inmates' receipt of same.

Medications are dispensed up to four times daily by multiple tier security officers who are

employed on different days and during different shifts.  Accordingly, even if certain officers

have acted improperly *vis-a-vis* the plaintiff by misappropriating medications or by falsely

initialing records to indicate receipt, it stretches credulity to suggest that there is a far-reaching

conspiracy by numerous security officers covering multiple shifts over a long period of time to

result in a falsification of his medication records as he suggests and result in a finding that his

medical needs have been disregarded as he would have the Court believe.  For example, as noted

by the defendants, the plaintiff's medication records for the months of February and March,

2012, reflect his routine receipt of medications from at least eight different officers.  In the

absence of any credible evidence, therefore, reflecting that the LSP procedures are routinely

disregarded or that there is widespread abuse of these procedures by prison security officers, the

Court is unable to conclude that these procedures are deficient as a matter of law.   Although the

plaintiff has provided several statements signed by co-inmates which state, under penalty of

perjury, that the co-inmates have not received their prescribed medications at times, these statements are not sufficient to create a genuine issue of disputed fact.  Specifically, none of these statements provides any information regarding the medications which have allegedly been withheld from the inmates, how often, or for what length of time.  Instead, each statement is identical and, with the exception of the respective inmates' name and signature in the lines provided, states only:

> I _____ hereby declare I have been incarcerated at the Louisiana State Penitentiary Camp C ... and while being house at Camp C Unit I have been denied the right to receive my medication as prescribe by the doctor repeatedly by security.

*See* Rec. Doc. 45-1, pp. 1-4; Rec. Doc. 101-3, pp. 2-10.  This evidence does not approach the type of proof that has been found to be sufficient in other cases to support a claim of systemic deficiencies in a prison's medical care.  *Compare Brown v. Bolin*, 500 Fed. Appx. 309, 313 (5th Cir. 2012), *cert. denied*, __ U.S. __, 133 S.Ct. 2833 (2013) (affirming a grant of summary judgment in favor of the defendants and noting the absence of sufficient evidence of a systemic failure of medical care), with *Duvall v. Dallas County*, 631 F.3d 203, 206 (5th Cir. 2011) (affirming a judgment awarded to the plaintiff where evidence was introduced reflecting "bizarrely high" infection rates of staph infection, of which prison officials had long been aware, and inadequate procedures to control same), and *Shepherd v. Dallas County*, 591 F.3d 445, 453 (5th Cir. 2009) (affirming a judgment awarded to the plaintiff where evidence was introduced in the form of independent investigative reports by governmental agencies and affidavits signed by both prison employees and the facility's medical contractor, including one by the prison pharmacist indicating that "the administration of medication at the jail was so inadequate that ... half or more of inmates did not receive their prescription medications").  *Cf., Brown v. Cain*, __ Fed. Appx. __, 2013 WL 5881213, *2-3 (5th Cir. Nov. 4, 2013) (reversing a grant of summary judgment in favor of the defendants where the plaintiff's medical records appeared, in fact, to

reflect a non-receipt of medications for substantial periods of time and where the Court did not address alleged deficiencies in the LSP medication-delivery system in its Ruling).  Accordingly, in the absence of adequate evidence of systemic deficiencies in the medication-delivery procedures employed at LSP, the Court concludes that the defendants are entitled to summary judgment in connection with this claim.

In addition to the foregoing, the plaintiff asserts that defendants Swift, Simmons and Wells retaliated against him for the filing of an administrative grievance (and supplements thereto) in February and March, 2012, and for his refusal to thereafter agree to voluntarily withdraw that grievance.  Specifically, the plaintiff alleges that these defendants threatened and harassed the plaintiff in response to his refusal to withdraw the grievance and thereafter "orchestrated" an attack by a co-inmate on March 26, 2012.

The taking of action against an inmate in retaliation for the inmate's exercise of First Amendment constitutional rights is itself a violation of the inmate's constitutional rights.  *See Flores v. Boecker*, 531 Fed. Appx. 472 (5th Cir. 2013), *citing Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir.).  Specifically, prison officials are not allowed to retaliate against an inmate because of the inmate's exercise of his right to complain to supervisory officials about the alleged wrongful conduct of prison security officers.  However, inasmuch as claims of retaliation are not favored, it is the plaintiff's burden to provide more than mere conclusory allegations of retaliation:

> To state a claim of retaliation an inmate must ... be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred.  This places a significant burden on the inmate....  The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.

*Woods v. Smith*, 60 F.3d. 1161, 1166 (5th Cir. 1995).  Further, in order to sustain a showing of a constitutional violation, the plaintiff must assert more than a *de minimis* or inconsequential retaliatory adverse act.  *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006).

Based on the evidence before the Court, the Court concludes that there are disputed issues of material fact which preclude summary judgment in connection with the plaintiff's retaliation claim, but only as to defendant Swift.  In this regard, the plaintiff alleges in his Complaint that after he submitted several supplements to an earlier administrative grievance in February, 2012, defendant Swift began to harass the plaintiff by refusing the plaintiff his medications, by conducting a shakedown search of the plaintiff's cell (during which the defendant allegedly destroyed some of the plaintiff's property) and by reporting to other inmates on the cell tier that the plaintiff was a "snitch".  In addition, the plaintiff asserts that a few days prior to the attack by the referenced co-inmate, "Sergeant Sweft [sic] had told inmate George Lee and other inmates that I had 'snitch' on him."  The plaintiff further asserts that defendant Swift had often, in the past, provided co-inmate Lee with medications intended for other inmates, "either [for] sale or to get high on," and that by informing co-inmate Lee of the plaintiff's complaints, defendant Swift caused the co-inmate to "develop[] a dislike" toward the plaintiff because the plaintiff's complaints would likely end that practice.  According to the plaintiff, defendant Swift thus either "pay[ed]" the co-inmate to attack the plaintiff and/or "orchestrated" the resulting attack in retaliation for the plaintiff's complaints regarding the delivery of medications at LSP.  The plaintiff further asserts that he had never previously had any problems or disputes with co-inmate Lee which would have justified the referenced assault.

Based on the foregoing chronology of events, which the defendants do not address in their Motion for Summary Judgment or supporting evidentiary submission, the Court finds that there is a disputed issue of material fact in this case whether defendant Swift acted with retaliatory motive or with deliberate indifference to the plaintiff's safety in disseminating information to inmates on the cell tier that the plaintiff was a "snitch" or informant.  This

conduct, if true, placed the plaintiff at substantial risk of harm at the hands of co-inmates.

Specifically, even if the plaintiff is unable to establish that defendant Swift intended for the

ensuing attack to occur or was directly involved in causing the attack, courts have recognized

that a correctional officer may act with deliberate indifference to an inmate's safety when the

officer disseminates information to other inmates that the inmate is an informant, and the inmate

is subsequently attacked by co-inmates.  *See White v. Fox*, 470 Fed. Appx. 214, 223 (5th Cir.

2012) (concluding that if the defendant in fact "informed another prisoner that [the plaintiff]

acted as an informant, then whether [the defendant] acted with deliberate indifference to [the

plaintiff's] safety by creating a risk of assault is a question for the fact-finder").  Accordingly,

summary judgment should be denied relative to this claim and defendant.

Notwithstanding the foregoing, the Court finds that there is an insufficient factual basis

upon which to conclude that any other defendant bears liability in connection with the referenced

assault, either for acting with retaliatory motive or for failing to protect the plaintiff from harm at

the hands of the offending co-inmate.  First, whereas the plaintiff alleges that defendants

Simmons and Wells are also liable for the attack by the co-inmate on March 26, 2012, the

plaintiff's allegations relative to these defendants are entirely conclusory.  Whereas the plaintiff

made specific factual allegations in the Complaint regarding direct action taken by defendant

Swift to label the plaintiff a "snitch" or informant on the tier and/or "pay" the co-inmate to

undertake the assault, the plaintiff provides no similar allegations relative to defendants

Simmons and Wells.  To the contrary, the plaintiff alleges as to these latter defendants only that

they approached him on or about March 18, 2012, more than a week before the referenced

assault, and made non-specific threats of retaliation in response to the plaintiff's refusal to

withdraw a pending administrative grievance.  According to the plaintiff, the defendants only

stated that if the plaintiff did not withdraw the grievance, he could "no longer live in Camp C" and that he should transfer from the unit if he "knew what was good for [him]". Complaint, Rec. Doc. 1, at p. 7. In a subsequent sworn statement, the plaintiff asserted no more than that he "beleived [sic]" the attack by the co-inmate to have been "orchestrated by security." *See* Rec. Doc. 45 at p. 1. Based upon the conclusory nature of these allegations against defendants Simmons and Wells, the Court is unable to conclude that there exists a material question of disputed fact as to the liability of these defendants. Specifically, the plaintiff does not assert that these defendants took any direct action to label the plaintiff a "snitch" or that they were otherwise aware that defendant Swift had done so. Nor does the plaintiff allege that these defendants were aware of any potential impending attack by the offending co-inmate. Accordingly, there is no substantial suggestion that these defendants were deliberately indifferent to a substantial risk of serious harm faced by the plaintiff, and summary judgment should be granted as to them.

Similarly, the plaintiff's allegations relative to retaliatory conduct by any other defendant is equally conclusory. Specifically, even if the plaintiff did file a so-called "emergency" grievance on March 18, 2012, complaining of alleged verbal harassment and non-specific threats of retaliation made by defendants Simmons and Wells on or after that date, this grievance would not have placed any defendant on sufficient notice that the plaintiff faced a substantial risk of danger at the hands of a co-inmate. Accordingly, any alleged failure by prison officials to respond to that grievance or provide the plaintiff with protection before the attack is not actionable as a matter of law. The Court finds equally conclusory the plaintiff's assertions that the defendants acted with retaliatory motive on the date of the attack – when defendant Katherine Franklin and Lt. James Savoy intervened to stop the attack – or thereafter – when the

plaintiff was charged with disciplinary violations and found guilty based upon an allegedly false

investigatory report prepared by defendant Daniel Davis.  Specifically, the plaintiff provides no

facts or chronology of events to suggest any retaliatory intent on the part of these defendants.

Moreover, he acknowledges that there was no more than a delay of "a few seconds" in the

providing of assistance after the attack, and he provides no factual basis for disputing the

findings in defendant Davis' subsequent report that the plaintiff in fact willfully participated in

the fight with the co-inmate after it commenced and attempted himself to inflict injury on the co-

inmate.[7]  Accordingly, the Court concludes that there is no basis for a finding of liability as to

these defendants, and summary judgment is appropriate relative to the remaining claims and

defendants.[8]

---

7.  Moreover, the plaintiff is not constitutionally entitled to a full and fair investigation into his administrative claims or disciplinary appeals, and he is not constitutionally entitled to any particular result or finding as a consequence of such investigation.  *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005).  Accordingly, the plaintiff's claim relative to the allegedly false disciplinary investigation conducted by defendant Daniel Davis fails to state a claim of constitutional dimension.

8.  To the extent that the plaintiff's allegations may be interpreted as complaining regarding the issuance of an allegedly false disciplinary report against him on March 26, 2012, charging him with Contraband, Aggravated Disobedience and Aggravated Fighting, this claim must be rejected as a matter of law.  Specifically, it is clear that the mere issuance of one or more false disciplinary reports and the imposition of resulting punishment, without more, does not amount to a constitutional violation.  *Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984) (concluding that due process is satisfied if an inmate plaintiff is provided with disciplinary proceedings which afford him an "opportunity ... to clear himself of misdeeds which he did not commit").  Further, the United States Supreme Court has held that prison disciplinary proceedings do not implicate any constitutionally protected liberty interest unless the resulting punishment subjects an inmate to an atypical and significant deprivation (evaluated in the context of prison life) in which the State might conceivably have created a liberty interest for the benefit of the inmate.  *Sandin v. Conner*, 515 U.S. 472, 486 (1995).  In *Sandin*, the Supreme Court found that a disciplinary sentence of placement in segregated confinement failed to rise to the level of a constitutional claim.  In the instant case, similarly, the Court concludes that the plaintiff's disciplinary punishment, which included a transfer to segregated confinement and the loss of twelve (12) weeks of canteen privileges, did not result in an atypical and significant deprivation within the context of prison life.  *See Dickerson v. Cain*, 241 Fed. Appx. 193 (5th Cir. 2007) (finding that placement in segregated confinement at LSP was not "an atypical or

Finally, the plaintiff seeks to invoke the supplemental jurisdiction of this Court over potential state law claims.  A district court, however, may decline the exercise of supplemental jurisdiction if the state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the instant case, considering the allegations of the plaintiff's Complaint and the Recommendation of the Court that all of the plaintiff's federal claims be dismissed except his claim of retaliation and deliberate indifference asserted against a single defendant, the Court recommends that the exercise of supplemental jurisdiction be declined.

RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims and that the plaintiff's claims asserted against defendants Nakisha Rogers and Adriane Porter be dismissed, without prejudice, for failure of the plaintiff to serve these defendants within 120 days as mandated by Fed. R. Civ. P. 4(m).  It is further recommended that the plaintiff's Motion for Summary Judgment (Rec. Doc. 45) be denied, that the Motion for Summary Judgment of defendant Lonnien Simmons (Rec. Doc. 116) be granted, dismissing the plaintiff's claims asserted against this defendant, with prejudice, and that the Motion for Summary Judgment of the remaining defendants (Rec. Doc. 96) be granted in part, dismissing all of the plaintiff's claims asserted against the remaining defendants except his claim asserted against defendant Michael Swift, in the defendant's individual capacity, of retaliation

---

significant hardship").  Accordingly, the plaintiff's claim in this regard is without merit in a constitutional sense.

and deliberate indifference in connection with the alleged dissemination of information to other inmates in February or March, 2012, that the plaintiff was a "snitch" or informant, resulting in the plaintiff being attacked by a co-inmate on March 26, 2012, and that this matter be referred back to the Magistrate Judge for further proceedings.

Signed in Baton Rouge, Louisiana, on January 31, 2014.


RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE